## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | | |
|---|---|---|---|
| CLYDE EDWARD BRADLEY, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | Case No. 19-1248 | |
| | ) | | |
| TERI KENNEDY, | ) | | |
| | ) | | |
| Respondent. | ) | | |

## ORDER AND OPINION

Before the Court are Petitioner Clyde Edward Bradley's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 1) and Respondent Teri Kennedy's ("Respondent") Answer to the Petition (ECF No. 6). For the reasons set forth below, Petitioner's § 2254 Petition is DENIED.

## PROCEDURAL HISTORY

Petitioner is currently in the custody of the Illinois Department of Corrections and housed at Pontiac Correctional Center. In 2006, he was charged with two counts of heinous battery and four counts of aggravated domestic battery against his wife, Talefia Parker ("Parker"), for events that occurred between June 25, 2006, and July 26, 2006. (ECF No. 7-2 at 2). On February 7, 2008, the jury convicted Petitioner while also finding that his crimes were accompanied by brutal or heinous behavior indicative of wanton cruelty. (ECF No. 1 at 1; ECF No. 7-10 at 55). On March 14, 2008, Petitioner was sentenced to forty-five years in prison for heinous battery and was ordered to serve 85% of that term. (ECF No. 7-10 at 124-125). Additionally, Petitioner was sentenced to a consecutive term of fourteen years for aggravated battery. *Id.* at 125. The trial court found

consecutive sentences were necessary in order to protect the public from further criminal conduct. *Id.*

On May 29, 2009 Petitioner's direct appeal was filed. Petitioner argued that the trial court erred by (1) failing to allow all of the jurors to state whether they understood and accepted four principles of law as required by Illinois Supreme Court Rule 431(b); (2) barring evidence that Parker had withdrawn money from his bank account after he was arrested; (3) barring evidence that Parker had allegedly previously made false claims regarding two coworkers sexually assaulting her; (4) abusing its discretion by ordering Petitioner to serve his forty-five year sentence for heinous battery consecutively with his fourteen year sentence for aggravated domestic battery; (5) communicating *ex parte* when it responded to the jury's note; and (6) denying Petitioner effective assistance of counsel when his attorney failed to object to hearsay testimony. (ECF No. 7-1 at 24-66). On June 24, 2010, the Illinois Appellate Court rejected Petitioner's arguments and affirmed his convictions and sentences. (ECF No. 1 at 2; ECF No. 7-1 at 1-23). Subsequently, Petitioner filed a petition for leave to appeal to the Illinois Supreme Court, which it denied on January 26, 2011. (ECF No. 1 at 3).

On June 9, 2011, Petitioner filed a postconviction petition. *Id.* The state moved to dismiss the petition. (ECF No. 7-3 at 4). Following a hearing on the matter, the trial court granted the state's motion to dismiss. *Id.* at 5. Petitioner timely appealed and argued that the court erred when it dismissed Petitioner's postconviction petition because direct appeal counsel was ineffective for failing to raise Parker's alleged false accusations of sexual assault and for failing to challenge the submission of a fake gun to the jury. *Id.* He also argued that trial counsel was ineffective for failing to call certain witnesses and to provide an offer of proof regarding their potential testimony in support of the defense's theory of the case. *Id.* The appellate court affirmed the judgment

dismissing Petitioner's postconviction petition. *Id.* at 7. Following the order, Petitioner filed a petition for leave to appeal, which the Illinois Supreme Court denied on January 31, 2019. (ECF No. 7-4 at 27-50).

On July 22, 2019, Petitioner filed the instant Petition before this Court seeking relief under 28 U.S.C. § 2254. (ECF No. 1). Petitioner asserts four grounds for relief: (1) on direct appeal, the appellate court erred in finding the trial court's error harmless when it engaged in *ex parte* communications with the jury during their deliberations; (2) on direct appeal, the appellate court unreasonably concluded that the trial court did not err in preventing Petitioner from cross-examining Parker about allegedly stealing money from Petitioner; (3) direct appeal counsel was ineffective because he failed to argue the trial court's error in barring certain witnesses to testify regarding Parker's alleged previous false accusations under the same theory that Parker wanted to frame Petitioner to satisfy a drug debt; and (4) in its postconviction ruling, the appellate court erred when it found trial counsel was not ineffective for failing to call certain witnesses to testify about discussions held with Parker after Petitioner's arrest, as well as Parker's alleged adultery, drug use, and prior false accusations of sexual assault. *Id.* This Opinion follows.

## BACKGROUND

In February 2005, Petitioner and Parker got married.[1] At trial, Petitioner testified to the following set of details. Sometime after they were married, Parker developed a drug problem. He stated that in late 2005, Parker asked Petitioner for $5000.00 to pay a drug debt, and he insisted that he pay the debt in person, but Parker refused. Around the same time, Petitioner saw burns on Parker's chest and right hand. Petitioner testified that he did not cause either injury. On April 21,

---

[1] Most of the information for the background section has been taken from the Illinois Third District Appellate Court's September 26, 2018 Order. *People v. Bradley*, 2018 IL App (3d) 150301-U, appeal denied, 116 N.E.3d 921 (Ill. 2019); (ECF No. 7-3 at 2- 7).

2006, Parker came home in the middle of the night bleeding from a leg wound, head trauma, and burns to her chest and thigh. Petitioner again testified he did not cause those injuries. He drove her to the hospital, and on the drive there, Parker told him she had been with a group of women earlier in the evening. Petitioner testified that Parker told hospital staff and police officers that her injuries were caused by a gang fight. According to Petitioner, his marriage began breaking down after this incident. By late June or early July 2006, Petitioner talked to Parker about ending their marriage. In late July 2006, Parker picked him up after work and drove him home. He testified that after dinner, Parker told him she was going out to pay off her drug debt. Petitioner stated that Parker returned after midnight and was bleeding profusely from her face and her clothes were bloody. He offered to take Parker to the hospital, but she refused. Petitioner also noticed there was blood splatter in the apartment. The next day, he put her bloody clothes in a garbage bag and placed the bag in his car trunk. He also noticed a large amount of blood inside the car and subsequently took the car to be cleaned. When he arrived back home, Parker was not there. At approximately 10:00 PM, police arrived, and Petitioner was arrested after consenting to a search of the apartment.

   Parker also testified at trial. She stated that prior to their marriage, Petitioner had slapped her one time. By the end of 2005, their marriage began to change. Petitioner started accusing her of cheating on him and began harming her. On April 21, 2006, Parker stated that she went to the hospital due to injuries Petitioner inflicted. Petitioner had accused her of cheating and tried to cut her eye out. According to Parker, Petitioner also tied her legs together, tried to slice off her clitoris, stabbed her in the leg, and stomped on her. Parker stated that on the way to the hospital, Petitioner told her to say that she had been injured in a gang fight when asked about her injuries. She later told a detective that she did not want to pursue the gang fight case. In early July 2006, Parker stated that Petitioner accused her of cheating on him again. She testified that as a result, Petitioner burned

her with boiling water, taped her to a chair, and poured the water down her pants and into her mouth. On or about July 25, 2006, Parker picked up Petitioner from work and he was angry at her. Parker stated that Petitioner drove her to an abandoned house in the country, where he picked up a large stick and put it in the trunk. He then took her to a cornfield, called someone about dogs, and told her he was going to lock her in the trunk with the dogs. Petitioner proceeded to hit her with the stick and threw her against the car. Parker stated that when they were driving back, Petitioner hit her again. The couple then arrived at their apartment building where Parker testified that they sat arguing in the parking lot and Petitioner stabbed her in the face with a pen several times. Petitioner continued beating her when they arrived inside the apartment with decorative acorns and hit her in the face with his fists. According to Parker, he ordered her to clean up the blood in the bathroom and hit her with a shaving cream can while she was cleaning. Petitioner also struck her in the face with her ice pack. Parker denied leaving to go purchase crack cocaine that day. The following morning, Petitioner told her he was going to sell his car and left for work. Later that night, Petitioner slashed her face with a knife or scissors. On or about July 27, 2006, after Petitioner left for work, Parker called her aunt and went to the hospital. She told the medical staff and police about what Petitioner did to her.

At trial, an emergency room nurse who treated Parker testified that Parker had numerous burns and other injuries that Parker said her husband had caused. Police testified to discovering the following while searching the couple's apartment: blood spatters on the wall in the master bedroom, kitchen, and living room; blood on the master bedroom's comforter, sheets, and pillows; blood spatters on a poster; blood inside a wooden fruit bowl; blood on a pair of scissors; a piece of gauze with blood on it; sticky residue on a chair which appeared to be from tape; and a blank

gun.[2] (ECF No. 7-8 at 28-30, 57-58, 125). Police also searched Petitioner's car and found the following: a bag of bloody clothing inside the trunk; a wooden stick; blood on the roof of the vehicle and on the seat; and several pens. *Id.* at 34, 128-129. At trial, the parties stipulated that Parker's blood was found inside the car and on the items recovered from the apartment. (ECF No. 7-3 at 2).

During deliberations, the jury sent the trial judge a note asking: "[i]s it appropriate for the defendants [sic] brother to have been in the court room during jury selection? A couple of the ladies were upset that he may have gathered personal information on them for future retaliation." (ECF No. 7-1 at 9). The judge replied *ex parte* by stating "[i]t is appropriate because it is a public courtroom. However, your concerns may be alleviated if I visit with you after the case is concluded." *Id.*

The jury ultimately found Petitioner guilty of heinous batter and aggravated domestic battery accompanied by brutal or heinous behavior indicative of wanton cruelty.

## LEGAL STANDARD

Section 2254 provides for a federal writ of habeas corpus for a person in state custody when the individual is being held in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). This Court's review of state court decisions is limited by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). § 2254. If a state court adjudicated a claim on the merits, this Court can grant relief only if the state court adjudication resulted in (1) "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

---

[2] Petitioner testified this was a fake gun as part of his security job, but police characterized it as a blank gun in the record. (ECF No. 7-8 at 135; ECF No. 7-9 at 108-109).

proceedings." § 2254(d)(1), (d)(2). A state court decision involves an unreasonable application of clearly established law if the state court identifies the proper rule and unreasonably applies it to the facts, or if the state court unreasonably extends, or refuses to extend, a rule of law. *Williams v. Bartow*, 481 F.3d 492, 498 (7th Cir. 2007). In a writ of habeas corpus under § 2254 " a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The federal habeas court reviews the decision of the last state court to rule on the merits of the petitioner's claim. *Coleman v. Hardy*, 690 F.3d 811, 814 (7th Cir. 2012). Under Illinois law, all issues decided on direct appeal are *res judicata. People v. Montgomery*, 763 N.E.2d 369, 372 (Ill. App. Ct. 2001). Therefore, issues that are *res judicata* from the state direct appeal decision are not waived if they are not brought forth via a state postconviction petition as a court would not hear them. *See id; see also People v. Bradley*, 2018 Ill. App. 3d 150301-U, ¶ 31, appeal denied, 116 N.E.3d 921 (Ill. 2019) (holding that this Petitioner's issues that were decided on direct appeal would not be addressed by the appellate court in his postconviction petition).

## ANALYSIS

### I. *Ex Parte* Jury Communications

Petitioner claims his Sixth Amendment and Due Process rights were violated because while he was absent, the trial judge responded to a jury note. Respondent argues that the *ex parte* communication was not factually or legally incorrect, and therefore, it was not prejudicial and did not affect the outcome of the case.

*Ex parte* communications between a judge and jury are improper. *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 460-62 (1978) (finding *ex parte* meeting or communication between

7

judge and jury foreman "pregnant with possibilities for error"). A defendant has a Sixth Amendment right to be present in the courtroom at every stage of the trial. *Illinois v. Allen,* 397 U.S. 337, 338 (1970); *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001).

However, the "mere occurrence of an *ex parte* conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right," nor does a defendant have "a constitutional right to be present at every interaction between a judge and a juror" or "to have a court reporter transcribe every such communication." *United States v. Gagnon*, 470 U.S. 522, 526 (1985); *see also Ellsworth,* 248 F.3d at 640 ("But the constitutional right to presence is not implicated per se by a judge's *ex parte* communication with the jury during deliberations."). Rather, a defendant has "a due process right to be present at a proceeding 'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge,' " but only " 'to the extent that a fair and just hearing would be thwarted by his absence.'" *Gagnon*, 470 U.S. at 526 (quoting *Snyder v. Com. of Mass*., 291 U.S. 97, 108 (1934) (overruled on other grounds)). "Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987).

The appellate court's analysis of Petitioner's *ex parte* communication claim was consistent with Supreme Court decisions and was not objectively unreasonable. On direct appeal, the court correctly determined there was an improper *ex parte* communication. (ECF No. 7-1 at 20-22). The appellate court's determination was based on Illinois law and consistent with Supreme Court precedent. *See People v. Childs*, 636 N.E.2d 534, 538 (Ill. 1994) (affirming appellate court decision to reverse conviction because of *ex parte* jury communication). The burden was then placed on the state to show harmless error beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18,

24 (1967). The appellate court found the trial court's error was harmless beyond a reasonable doubt. (ECF No. 7-1 at 22). In reaching this conclusion, the appellate court noted that the jury note in question involved jurors fearing retaliation because Petitioner's brother was present in the courtroom during jury selection, and opined that Illinois case law indicates that fear of retaliation tends to make jurors vote for acquittal rather than for conviction. *Id.* at 21. According to the court, "any impartiality of the jurors in question should have worked in the defendant's favor rather than against him." *Id.* The court further opined that no rational jury would have found Petitioner not guilty absent this error.

The Court finds that Petitioner has failed to show that the appellate court erred in its analysis or acted unreasonably. Since the *ex parte* communication did not involve a fact in controversy or law applicable to the case, the communication was not prejudicial. *See Rushen v. Spain,* 464 U.S. 114, 121 (1983) (holding that *ex parte* communication between a judge and a juror was innocuous because "[t]hey did not discuss any fact in controversy or any law applicable to the case. The judge simply assured [the juror] that there was no cause for concern."). Accordingly, this argument for relief is denied.

## II. Witnesses Testimony Regarding Withdrawals from Petitioner's Bank Account

Petitioner argues that the appellate court incorrectly concluded the trial court did not err in preventing him from cross-examining Parker about allegedly "stealing money" from him, and calling Jerel Newbill ("Newbill") to testify about Parker and Newbill "stealing" his money. (ECF No. 1-1 at 22). According to Petitioner, there was evidence that in September 2006, after he was arrested, Parker gave Newbill his ATM card and identification number to withdraw $2500.00 from Petitioner's bank account. The defense wanted to present this evidence at trial to advance the theory that Parker was framing Petitioner in the underlying criminal case in order to gain access

to his assets to fund her drug habits. Before trial, the prosecution filed a motion to preclude the defense from questioning Parker about this allegation and the trial court granted the motion. Respondent argues that Petitioner's claim has been procedurally defaulted because he did not raise this issue through one complete round of the state's appellate review since he left it out of his postconviction leave for appeal. Further, even if he did preserve the claim, Respondent argues it is without merit because the appellate court's adjudication was not contrary to, or an unreasonable application of Supreme Court precedent, and the trial court's ruling did not deny Petitioner an opportunity to present his defense.

Typically, a habeas petitioner must fully and fairly present his federal claims through one full round of state court review before he files his federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999); *Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012). However, the Court does not find that Petitioner defaulted on this argument here because the issue was decided on direct appeal, and Illinois law dictates that issues decided on direct appeal are *res judicata* and do not need to be addressed postconviction. *See Montgomery,* 763 N.E.2d at 372. Therefore, Petitioner raised the issue as far as he could take it. Accordingly, the Court will address whether Petitioner is entitled to habeas relief on this issue.

The admissibility of evidence is generally a matter of state law. *Milone v. Camp*, 22 F.3d 693, 702 (7th Cir. 1994) (citation omitted). Accordingly, absent a showing that the refusal to admit evidence violated a specific constitutional guarantee, a federal court can only issue a writ of habeas corpus on the basis of a state court evidentiary ruling when that ruling violated the petitioner's right to due process by denying him a fundamentally fair trial. *Id.*

On direct appeal, the appellate court held the proposed evidence related to the withdrawals from Petitioner's bank account occurred after Petitioner's arrest, rather than before, and was

ultimately too remote and uncertain to be admissible. (ECF No. 7-1 at 17). In this Petition, Petitioner offers no evidence to demonstrate that the proposed testimony that the trial court excluded was not too remote to be relevant. Petitioner was arrested in July 2006 and the alleged withdrawal did not occur until September 2006. In fact, according to defense counsel at trial, no bank records existed to establish the withdrawal. (ECF No. 7-8 at 176). The only physical evidence included a purported letter from the bank indicating there was an investigation into the potentially fraudulent nature of the withdrawal. *Id.* at 177. The outcome of the investigation was not presented.

Notwithstanding these facts, Petitioner was still afforded the ability to present his defense at trial when he cross-examined Parker about being beaten by gang members and her alleged $5000.00 drug debt. (ECF No. 7-9 at 24, 25, 49). Petitioner also testified that Parker purportedly had a drug problem, asked him for money to pay her drug debts, including the $5000.00 debt, and that he did not abuse her. *Id.* at 137-139. Even though Petitioner could not present evidence of Parker withdrawing money from his account after he was arrested, Petitioner was able to present evidence in the form of testimony to support his theory that Parker had an alleged drug problem and motivation to frame him for her injuries to pay her debts.

The Court finds that resolution of this issue by the appellate court is not contrary to clearly established federal law and finds no deprivation of Petitioner's constitutional rights in the trial court's refusal to admit evidence of Parker's alleged bank withdrawal. Accordingly, this ground for relief is denied.

### III.  Ineffectiveness of Direct Appeal Counsel

In his third claim, Petitioner contends that direct appeal counsel performed ineffectively by failing to argue that the trial court denied a full defense when the court barred witnesses from testifying about Parker's alleged false accusations of sexual assault. Petitioner states that direct

appeal counsel should have included this argument when he asserted that allowing evidence of the prior false accusations would have advanced the defense's theory that Parker wanted to frame Petitioner to satisfy a drug debt. Petitioner states that instead of using that argument, direct appeal counsel asserted that these alleged accusations were admissible because a line of cases found such false accusations to be admissible in sexual assault cases as an exception to the Rape Shield Statute. These allegedly false accusations would have been evidenced by the testimony of Parker's previous co-workers, Brian Tranchitella ("Tranchitella") and Jo Lynn White ("White"). Respondent argues that the record contradicts Petitioner's third claim, because direct appeal counsel argued that testimony regarding Parker's alleged false accusations of sexual assault prevented his due process right to present a full defense.

In his postconviction brief, Petitioner raised the same argument and stated that he made a substantial showing that direct appeal counsel was ineffective for failing to raise the denied admission of Parker's false accusations of sexual assault against her coworkers. (ECF No. 7-3 at 5). On review, the appellate court found that while Petitioner argued that he was presenting a different theory regarding Parker's false allegations, the issue was already decided on direct appeal. *Id.* On direct appeal, the appellate court found the trial court properly barred the evidence as prior bad acts. (ECF No. 7-1 at 15). Thus, the appellate court opined, "[r]egardless of what theory [Petitioner] wants to support with evidence of Parker's false allegations . . . [i]ssues decided on direct appeal are *res judicata* in a postconviction petition." (ECF No. 7-3 at 5).

The Supreme Court has established a two-part inquiry for determining whether a defendant received ineffective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668 (1984). The Court must consider whether counsel's performance deficient, and if so, was it prejudicial to the defendant. *Id.* at 687. The Court does not find that direct appeal counsel's performance was

deficient. In Petitioner's direct appeal brief, counsel argued that the exclusion of evidence regarding Parker's prior false accusations was prejudicial in the same way as the exclusion of evidence regarding her alleged theft of Petitioner's money from his bank account. (ECF No. 7-1 at 55). As noted above, trial counsel wanted to use evidence of Parker "stealing" to advance the theory that Parker was framing Petitioner in order to gain access to his assets to fund her drug habits. Direct appeal counsel noted that Parker's alleged false accusations were intended to be used under "[Petitioner's] claim[] that [Parker] was framing him." *Id.* Accordingly, direct appeal counsel did argue that evidence of Parker's prior accusations would have advanced the defense's theory that Parker was attempting to frame Petitioner. Even if direct counsel used cases that related the Rape Shield Statute, this was not prejudicial to Petitioner. On direct appeal, the court found that Parker's alleged prior bad acts were inadmissible, and Parker could not be impeached because there were no criminal convictions to substantiate the accusations. *Id.* at 15. This is proper under Illinois law. *See People v. Franklin,* 656 N.E.2d 750, 759 (Ill. 1995). Additionally, the record did not reflect that Parker admitted that her claims were false. (ECF No. 7-1 at 16). There is no reasonable probability that but for direct counsel's presentation of arguments, the direct appeal would have had a different result. *See Strickland,* 466 U.S. at 694.

Consequently, the appellate court's finding on postconviction review that Petitioner's counsel's "failure" was not ineffective assistance because the issue had no merit and was *res judicata* was not an unreasonable application of federal law entitling Petitioner to habeas relief. *See Ouska v. Cahill-Masching*, 246 F.3d 1036, 1053-54 (7th Cir. 2001) (finding state appellate court's decision that it was not ineffective assistance for defense counsel to fail to raise an argument that would not have changed the outcome at trial was not an unreasonable application of *Strickland* requiring habeas relief under § 2254). Therefore, this ground for relief is denied.

**IV. The Reasonableness of the Illinois Appellate Court's Determination When it Concluded that Trial Counsel Performed Effectively**

Petitioner challenges whether the state appellate court was reasonable in finding that trial counsel did not perform deficiently when he failed to call certain witnesses and Petitioner was not prejudiced from any alleged deficiency. He contends that there are four areas where the appellate court "got the facts wrong." (ECF No. 1-1 at 39). The four situations where Petitioner claims the court misunderstood the facts include: (1) his daughter, Teirria Chalk's, proposed testimony; (2) barring evidence of Parker's sexual activity; (3) evidence regarding Parker's drug use; and (4) failure to proffer certain witnesses' testimony. Respondent states that Petitioner has not shown that the appellate court's determination was against clear and convincing evidence or that he has a meritorious constitutional claim.

Under the AEDPA, a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment shall not be granted with respect to any claim that was adjudicated on the merits unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in the light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). A state court decision is clearly contrary to established law if the state court applied a rule that contradicted the governing law as set forth in Supreme Court cases, or if, being confronted with a set of facts materially indistinguishable from those examined by Supreme Court precedent, the state court arrived at an opposite result. *Williams v. Bartow*, 481 F.3d 492, 498 (7th Cir. 2007). Additionally, a state court decision involves an unreasonable application of clearly established law if the state court identifies the proper rule and unreasonably applies it to the facts, or if the state court unreasonably extends, or refuses to extend, a rule of law. *Id.* To find whether Supreme Court

14

precedent has been unreasonably applied, the question is not whether the state court's application was "clearly erroneous", but rather whether the decision was "objectively unreasonable." *Id.*

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

To claim ineffective assistance of counsel, a petitioner must show that (1) counsel's performance fell below an objective standard of reasonableness; and (2) but for counsel's alleged errors and omissions, there is a reasonable probability that the outcome of the trial would have been different. *Strickland*, 466 U.S. at 687; *Lee v. Davis*, 328 F.3d 896, 900 (7th Cir. 2003). The burden is even higher for habeas review of a state court decision, as "[u]nder AEDPA establishing that a state court's application of the *Strickland* standard was 'unreasonable' is a tall task, and 'only clear error in applying *Strickland* will support a writ of habeas corpus.'" *McAfee v. Thurmer*, 589 F.3d 353, 356 (7th Cir. 2009) (internal quotation omitted). The habeas petitioner must overcome the strong presumption that counsel's conduct was reasonable and that the challenged action might be considered sound trial strategy, as strategic choices are "virtually unchallengeable." *Id.* at 356. Courts "presume that trial counsel's decision not to call a witness was strategic." *Weaver v. Nicholson*, 892 F.3d 878, 885 (7th Cir. 2018).

### A. *Teirria Chalk's Proposed Testimony*

Petitioner states that the appellate court correctly noted that Teirria Chalk ("Chalk") was interviewed by an investigator and would testify that Parker requested $2500.00 - $5000.00 and Petitioner's car from her. However, Petitioner claims that the appellate court incorrectly claimed that "none of the witnesses testified any of Parker's conduct involved requests for money," as

Chalk's allegations clearly involved Parker asking for thousands of dollars and Petitioner's car for an exchange to dismiss the charges or "fix" them. (ECF No. 7-3 at 4, 6). Respondent argues that Petitioner has analyzed the appellate court's opinion out of context, because that court was discussing a different group of witnesses - White, Tranchitella, Newbill, Michael Linwood ("Linwood"), and Wesley Johnson ("Johnson") - when it stated that none of them would testify regarding requests for money. According to Respondent, the appellate court was opining that the intended witnesses would have testified regarding Parker's alleged false accusations and sexual conduct in relation to her drug use and debt – none of which involved requests for money.

While the appellate court did not employ *Strickland* in its analysis, this Court does not find its ruling to be contrary to, or an unreasonable application of, clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that citation of *Strickland* is unnecessary, "so long as neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent.) The appellate court made a reasonable determination that trial counsel was not ineffective, but rather his decision to not call several witnesses was sound trial strategy.

Respondent is correct that Petitioner incorrectly attributed the appellate court's opinion about testimony involving requests for money to Chalk, when the opinion that "none of the witnesses testified any of Parker's conduct involved requests for money" was clearly referring to the other witnesses. *Id.* at 6. In its opinion, the appellate court stated that "several witnesses would have testified regarding Parker's alleged sexual conduct, particularly in regard to her drug use and debt . . . the testimony would have challenged Parker's credibility and impeached her testimony by establishing Parker was an addict with drug debts who was unfaithful to [Petitioner]." *Id*. This explanation was not meant for Chalk's proposed testimony as she was not going to testify about Parker being a drug addict or her sexual conduct.

It appears that the appellate court did not specifically reference Chalk's proposed testimony in its analysis. Regardless, it was implicit that she was included in the overall conclusion of the court. The appellate court opined that "[t]rial counsel was aware of the witnesses and their potential testimony and reasonably determined that the witnesses would not assist the defense. None of the witnesses offered any information that Parker was injured by someone other than [Petitioner]." *Id.* at 6-7. This is true of Chalk as her testimony did not provide an alternate theory of how Parker sustained her injuries.

Petitioner asserts that Chalk's testimony would have suggested that Parker had some financial motive to frame Petitioner, but the Court finds that the testimony could have been damaging to Petitioner. According to the investigator's notes, it was Chalk who asked Parker "[w]hat can we do to fix this?" (ECF No. 7-4 at 56). When money was brought up, Parker purportedly questioned if the "money [was] for me because he loves me and it will let me start my new life or for me not to testify?" *Id.* This testimony could have suggested that Petitioner's daughter was attempting to influence Parker's testimony, rather than Parker having financial motive to frame Petitioner. Therefore, the appellate court was reasonable in finding that trial counsel's decision not to call Chalk was sound trial strategy, and Petitioner was not prejudiced when Chalk did not testify.

Here, Petitioner has failed to meet his burden of demonstrating that the state appellate court's decision was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts. Therefore, his claim on this ground is denied.

*B. Barring Evidence of Parker's Sexual Activity*

Petitioner claims that the appellate court was incorrect when it stated that "testimony regarding Parker's sexual activity during the marriage was barred." (ECF No. 7-3 at 6). Instead, Petitioner argues that the trial court did not issue a blanket ruling barring any inquiry into Parker's sexual activity, only that the defense was barred from calling Tranchitella and White about Parker's false allegations of sexual assault and whether Parker exchanged sex for cocaine. According to Petitioner, this is evidenced by Valencia McClain's ("McClain") testimony where she stated Parker was seeing someone. McClain was the couple's friend. Therefore, Petitioner asserts trial counsel should have called Michael Linwood ("Linwood") to testify that he personally witnessed Parker committing adultery during her marriage with Petitioner. Respondent argues that Petitioner is incorrect because the trial court specifically ruled that the defense could not elicit testimony about Parker's sexual conduct before or after his arrest and McClain's testimony was not about Parker's sexual conduct.

The Court finds that the appellate court properly determined that a witness such as Linwood could not have testified. According to the record, the trial court distinctly barred any testimony regarding Parker's sexual activity before or after Petitioner's arrest. (ECF No. 7-8 at 172). Additionally, McClain's testimony related to Parker's social life, not her sexual activity. (ECF No. 7-9 at 84-87). At one point, McClain testified that in 2005, Parker confided in her that she was seeing a man in Bloomington, but was going to end the relationship because she was married to Petitioner. *Id.* at 85. Overall, McClain did not make mention of Parker's sexual conduct. *Id.* at 84-87. This is most likely due to the ruling in effect barring testimony regarding Parker's sexual activity. Even if the court had allowed Linwood to testify, it would not have benefited Petitioner

as it would have supported the prosecution's theory that Petitioner abused Parker because he believed she was cheating on him.

Accordingly, Petitioner has failed to demonstrate that the appellate court made an unreasonable determination of the facts and he was not prejudiced by trial counsel's strategy to not have Linwood testify. Petitioner's claim on this ground is denied.

### C. *Barring Evidence of Parker's Drug Use*

Petitioner claims that the appellate court misapprehended the importance of Newbill's, Linwood's, and Johnson's proposed testimony about Parker's alleged drug use around the time of the offense and at trial. According to Petitioner, their testimony was admissible to impeach Parker when she denied that she was a drug user. Respondent states that the appellate court did understand how important the testimony of these proposed witnesses could be as it observed they may have had knowledge about Parker's alleged drug use, and the court noted that testimony of a witness who used drugs "reflects on the witness's credibility and recall ability." (ECF No. 7-3 at 6). Even so, the court concluded that trial counsel's decision was attributable to trial strategy and not ineffective assistance, and Respondent agrees with such a determination. Moreover, Respondent argues that even if the appellate court misapprehended the proposed witnesses' testimony, Petitioner has not provided a basis for overcoming the presumption that trial counsel's decision was not trial strategy and the evidence against Petitioner at trial was overwhelming.

The appellate court carefully considered the witnesses' testimonies and acknowledged that drug use "is proper on cross-examination as it reflects on the witness's credibility and recall ability." (ECF No 7-3 at 6). However, "[g]eneral testimony that [Parker] used drugs does not support a financial motive . . ." *Id.* Additionally, the witnesses still did not show that another person

injured Parker. Therefore, "trial counsel . . . reasonably determined that the witnesses would not assist the defense" and there was no ineffective assistance of counsel in this matter. *Id.*

This Court finds that the appellate court's decision was reasonable and not contrary to the law. Even if Parker was a drug user during the time of the incident, or at the time of trial, trial counsel's decision to not call them does not rise to the level of ineffective assistance of counsel as Petitioner has not shown that he would have been acquitted if they testified that Parker used drugs. As previously noted, Parker's alleged drug use would not show that another person other than Petitioner inflicted Parker's injuries. Accordingly, Petitioner has not shown prejudice based on this alleged error. This Court concludes that Petitioner has not met the *Strickland* standard to demonstrate ineffective assistance of trial counsel. Petitioner's claim on this ground is denied.

### D. Failure to Proffer Witnesses' Testimony

Finally, Petitioner argues that the appellate court's conclusion that trial counsel was relieved from making a full proffer of White's and Tranchitella's testimony, since it was "barred by a motion *in limine* order, was "circular." (ECF No. 1-1 at 41). Petitioner contends that he was prejudiced by trial counsel's failure to make a full proffer since it is necessary to ensure non-waiver of the issue on appeal. Respondent states that at trial, counsel represented there were witnesses who would testify that Parker had made false accusations of sexual assault at work, specifically that one accusation occurred at Rosewood (where Tranchitella worked) and another was against White. Additionally, Petitioner already argued on direct appeal that trial court erred in excluding evidence about the alleged false accusations, and rather than finding waiver, the court denied Petitioner's claim on the merits. Therefore, Respondent states that trial counsel's proffer was sufficient and there was no prejudice to Petitioner.

The appellate court acknowledged that failure to make an offer of proof would waive the issue on appeal, but concluded that "because the evidence was inadmissible and barred by a motion *in limine* order, an offer of proof was unnecessary." (ECF No. 7-3 at 7). This Court finds the ruling did not result in a decision that was based on an unreasonable determination of the facts in the light of the evidence. It was clear that information about Parker's sexual activity during and after Petitioner's arrest was barred. (ECF No. 7-8 at 172).

Even if the appellate court was incorrect in its ruling, the Court finds that trial counsel sufficiently preserved the claim for appellate review. During trial, counsel represented he had witnesses that would testify that Parker made false accusations of sexual assault at work. (ECF No. 7-7 at 12-14, 7-8 at 178-180). According to trial counsel, this testimony would hurt Parker's credibility and support the theory that she was falsely accusing him in order to pay her drug debts. (ECF No. 7-7 at 12-14). The statements made on the record were used in Petitioner's direct appeal when he argued that the defense should have been able to present witnesses that would have testified as to Parker's alleged false accusations. (ECF No. 7-1 at 52-56). On direct appeal, the court found these arguments had no merit. (ECF No. 7-1 at 15-16). Trial counsel sufficiently preserved the claim for appeal as it was included in Petitioner's direct appeal brief and the appellate court analyzed the argument. Therefore, trial counsel was not deficient and Petitioner's argument on this matter is denied.

## CERTIFICATE OF APPEALABILITY

When the Court enters a final order adverse to the petitioner, the Court must issue or deny a certificate of appealability. *See Rule* 11(a), Rules Governing Section 2254 Cases in the United States District Courts. A certificate of appealability may issue only where the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial

showing exists where "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The Court finds that no reasonable jurist would debate whether Petitioner is entitled to habeas relief under 28 U.S.C. § 2254. Therefore, the Court declines to issue a certificate of appealability.

## CONCLUSION

For the reasons stated above, the Court DENIES Petitioner's Petition for a Writ of Habeas Corpus [1]. The Court further declines to certify any issue for appeal. This case is now TERMINATED.

ENTERED this 7th day of February, 2020.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge